**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CAROL ANN FOX FANDAL**                         **CIVIL ACTION**

**VERSUS**                                        **NO. 21-552-WBV-MBN**

**PAMELA QUINLAN**                                **SECTION: D (5)**

### COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.    PROCEDURAL HISTORY

On or about May 20, 2020, Carol Ann Fox Fandal filed a Petition to Set Aside Donation for Fraud, Etc. in the 22nd Judicial District Court in St. Tammany Parish, Louisiana, seeking to set aside a donation *inter vivos* of her immovable property located at 35337 Bayou Liberty Road in Slidell, Louisiana (the "Property"), made to her neighbor and Power of Attorney, Pamela Quinlan, dated October 9, 2019.[1]  Fandal alleged that the donation should be set aside because: (1) the Property was all of the property she owned at the time of the donation; (2) Quinlan enticed Fandal to enter into the donation; and (3) Quinlan exploited Fandal for her own profit, as defined in La. R.S. 14:93.4.[2]  Quinlan removed the matter to this Court on March 17, 2021 alleging diversity jurisdiction.[3]  Fandal subsequently died and her daughter, Franchesca Felicia Fandal Band, was substituted as plaintiff in the state court proceeding.[4]  Roy K. Burns, Jr., the executor of Fandal's estate, was ultimately named as the substitute plaintiff in this case.[5]  Quinlan filed an Answer to the Third

---

[1] R. Doc. 1-1; Joint Exhibit 1.
[2] R. Doc. 1-1 at ¶¶ V-IX.
[3] R. Docs. 1 & 6.
[4] R. Docs. 40, 42, 43, 44.
[5] R. Docs. 45, 46, 47.

Amended Complaint Substituting Complainant, asserting counterclaims against Burns, in his capacity as executor of Fandal's estate, and third-party claims against Band, individually and as temporary executrix of Fandal's estate, for: (1) conversion and trespass of the Property; (2) intentional infliction of emotional distress; (3) wrongful eviction; (4) loss of use of the Property; (5) reimbursement for all damages and deterioration to the Property beyond ordinary wear and tear; (6) slander, libel, and defamation; (7) failure to provide access to the Property; and (8) "for all other acts of negligence and/or intentional torts that will be proven at the trial of this matter."[6]

In the Third Amended Complaint, Burns clarified that he seeks to set aside Fandal's donation as contrary to La. Civ. Code arts. 1498 and 1479.[7]  On December 27, 2021, this Court partially granted Quinlan's Motion for Summary Judgment, dismissing with prejudice Burns' claim to set aside the donation on the basis that it was the result of undue influence under Article 1479.[8]  The Court, however, denied the Motion to the extent Quinlan sought dismissal of Burns' claim to set aside the donation under Article 1498 on the basis that the donation divested Fandal of all of her property and did not reserve to Fandal enough for her subsistence.  As a result, the matter proceeded to trial on that issue, as well as Quinlan's counterclaims and third-party claims against Burns and Band.

This matter was tried before the Court without a jury on April 20, 2022 and April 25, 2022.  The Court has carefully considered the testimony of all of the

---

[6] R. Doc. 65 at ¶ XXXI.

[7] R. Doc. 47.

[8] R. Doc. 57.

witnesses and the exhibits entered into evidence during the trial, as well as the record in this matter. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court enters the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusion of law may be construed as a finding of fact, the Court adopts it as such.

## II.   FINDINGS OF FACT

1. Prior to and through October 9, 2019, Fandal was the owner of property consisting of two lots located at 35337 Bayou Liberty Road in Slidell, Louisiana.[9] The property descriptions are: (1) A certain parcel of land together with all improvements thereon situated in Bayou Terrace Subdivision, Section 38, T.9 S, R. 14 E, St. Tammany Parish Louisiana; and (2) A certain parcel of land together with all improvements thereon situated in Bayou Terrace Subdivision, Section 38, T.9 S, R. 14 E, St. Tammany Parish Louisiana, Lot 6 Square 4 Bayou Terrace Subdivision ("the Property").

2. On October 9, 2019, Fandal signed a donation *inter vivos*, notarized by Lynda Wright and witnessed by Stephanie Whitten and Paul Herbert, donating the Property to Pamela Quinlan subject to a lifetime usufruct in favor of Fandal.

---

[9] On April 25, 2022, counsel for the parties clarified that there was a typographical error in the act of donation, which lists 35337 Bayou Liberty Road as the address of the property, and that the donated property is actually located at 35327 Bayou Liberty Road. Counsel for the plaintiff also clarified that plaintiff does not seek to revoke the donation on that basis. Counsel further agreed that the property description in the act of donation was accurate.

3.  On or about May 20, 2020, Fandal filed Petition to Set Aside Donation for Fraud, Etc. against Pamela Quinlan in the 22nd Judicial District Court in St. Tammany Parish, Louisiana, seeking to revoke her donation.[10]

4.  Fandal subsequently died on January 13, 2021.

5.  Quinlan removed the matter to this Court on March 17, 2021, asserting diversity jurisdiction under 28 U.S.C. § 1332.[11]

6.  On May 14, 2021, Franchesca Felicia Fandal Band, the daughter and alleged successor of Fandal, filed an unopposed Motion for Leave to File Second Amended Complaint to substitute herself as the plaintiff in this matter.[12]  The Court granted the Motion on May 17, 2021.[13]

7.  On June 23, 2021, Fandal's Last Will and Testament was probated in the 22nd Judicial District Court in St. Tammany Parish, Louisiana.[14]  Band was originally appointed as the Testamentary Executrix of Fandal's estate on June 23, 2021.[15]

8.  Because Band was ineligible to fill the position of Testamentary Executrix, Roy K. Burns, Jr., attorney for Band, was substituted as the Testamentary Executor of Fandal's estate on July 14, 2021.[16]

---

[10] R. Doc. 1-1.
[11] R. Doc. 1.
[12] R. Doc. 24.
[13] R. Doc. 25.
[14] R. Doc. 47 at ¶ XVIII; *See,* R. Doc. 43-1.
[15] R. Doc. 47 at ¶ XIX; *See,* R. Doc. 43-1.
[16] R. Doc. 47 at ¶¶ XX-XXII.

9.  On September 16, 2021, the Court granted Burns' Motion to Substitute Party (Complainant) and Amend Complaint to Reflect the Substitution,[17] substituting Burns, in his capacity as executor, as the plaintiff in this matter.[18]

10. The only claims remaining in this case include Burns' claim, as executor of Fandal's estate, to set aside and revoke the donation *inter vivos* as contrary to La. Civ. Code art. 1498, and Quinlan's counterclaims against Burns, in his capacity as executor of Fandal's estate, and Quinlan's third-party claims against Band, individually and as temporary executrix of Fandal's estate, for intentional infliction of emotional distress and defamation.[19]

11. The parties stipulated at trial that at the time of the donation *inter vivos*, Fandal was receiving $999.00 a month in social security benefits and $849.80 a month in her husband's retirement benefits, for a total of $1,848.80 each month.

12. The parties also stipulated at trial that, at the time of the donation and at the time of her death, Fandal owned no other immovable property beyond her lifetime usufruct/right of habitation in the Property.

13. The Court further finds, based upon the bank statements submitted by Quinlan and the testimony and evidence introduced at trial, that Fandal's donation of the property to Quinlan did not divest Fandal of all of her property, and that she reserved to herself enough for subsistence.

---

[17] R. Docs. 43, 44, 45, & 46.
[18] R. Doc. 47.
[19] *See*, R. Docs. 47 & 65.  On April 25, 2022, defense counsel stated on the record during the bench trial that the only remaining counterclaims and third-party claims asserted by Quinlan against Burns and Band are for defamation and intentional infliction of emotional distress.

14. According to the "Statement Summary As Of 03/31/19," Fandal's Heritage Bank savings account had a beginning balance of $24,585.29 on January 1, 2019, and an ending balance of $19,002.12 on March 31, 2019.[20]

15. According to the "Statement Summary As Of 04/30/19," Fandal's Heritage Bank savings account had a beginning balance of $19,002.12 on April 1, 2019, and an ending balance of $102.38 on April 30, 2019.[21]

16. According to the "Statement Summary As Of 05/31/19," Fandal's Heritage Bank savings account had a beginning balance of $102.38 on May 1, 2019, and an ending balance of $702.39 on May 31, 2019.[22]

17. According to the "Statement Summary As Of 06/30/19," Fandal's Heritage Bank savings account had a beginning balance of $702.39 on June 1, 2019, and an ending balance of $3,000.28 on June 30, 2019.[23]

18. According to the "Statement Summary As Of 09/30/19," Fandal's Heritage Bank savings account had a beginning balance of $3,000.28 on July 1, 2019, and an ending balance of $2,200.88 on September 30, 2019.[24]

19. According to the "Statement Summary As Of 12/31/19," Fandal's Heritage Bank savings account had a beginning balance of $2,200.88 on October 1, 2019, and an ending balance of $0.00 on December 31, 2019.[25]  According to that

---

[20] Exhibit P 1,  Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000029.
[21] Exhibit P 1,  Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000034.
[22] Exhibit P 1,  Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000038.
[23] Exhibit P 1,  Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000041.
[24] Exhibit P 1,  Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000045.
[25] Exhibit P 1,  Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000049. According to the bank statement, the entire balance of the account was transferred to an account ending in 2079.  *Id*. at Bates 000050.  The Court notes that Fandal's Heritage Bank checking account ends in 2079.

Statement Summary, Fandal's Heritage Bank savings account had a balance of $2,201.07 on October 31, 2019.[26]

20. According to the "Statement Summary As Of 02/20/19," Fandal's Heritage Bank checking account had a beginning balance of $0.00 on January 24, 2019, and an ending balance of $1,090.50 on February 20, 2019.[27]

21. According to the "Statement Summary As Of 03/20/19," Fandal's Heritage Bank checking account had a beginning balance of $1,090.50 on February 21, 2019, and an ending balance of $13,054.92 on March 20, 2019.[28]

22. According to the "Statement Summary As Of 04/21/19," Fandal's Heritage Bank checking account had a beginning balance of $13,054.92 on March 21, 2019, and an ending balance of $5,316.06 on April 21, 2019.[29]

23. According to the "Statement Summary As Of 05/20/19," Fandal's Heritage Bank checking account had a beginning balance of $5,316.06 on April 22, 2019, and an ending balance of $65.46 on May 20, 2019.[30]

24. According to the "Statement Summary As Of 06/20/19," Fandal's Heritage Bank checking account had a beginning balance of $65.46 on May 21, 2019, and an ending balance of $2,450.39 on June 20, 2019.[31]

---

[26] Exhibit P 1, Heritage Bank of St. Tammany Savings Account ending in 0830, Bates 000050.
[27] Exhibit P 1, Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000066.
[28] Exhibit P 1, Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000071.
[29] Exhibit P 1, Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000079.
[30] Exhibit P 1, Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000086.
[31] Exhibit P 1, Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000097.

25. According to the "Statement Summary As Of 07/21/19," Fandal's Heritage Bank checking account had a beginning balance of $2,450.39 on June 21, 2019, and an ending balance of $366.87 on July 21, 2019.[32]

26. According to the "Statement Summary As Of 08/20/19," Fandal's Heritage Bank checking account had a beginning balance of $366.87 on July 22, 2019, and an ending balance of $1,006.71 on August 20, 2019.[33]

27. According to the "Statement Summary As Of 9/22/19," Fandal's Heritage Bank checking account had a beginning balance of $1,006.71 on August 21, 2019, and an ending balance of $1,397.25 on September 22, 2019.[34]

28. According to the "Statement Summary As Of 10/20/19," Fandal's Heritage Bank checking account had a beginning balance of $1,397.25 on September 23, 2019, and an ending balance of $1,689.09 on October 20, 2019.[35]

29. According to the "Statement Summary As Of 11/20/19," Fandal's Heritage Bank checking account had a beginning balance of $1,689.09 on October 21, 2019, and an ending balance of $1,532.05 on November 20, 2019.[36]

30. According to the "Statement Summary As Of 12/22/19," Fandal's Heritage Bank checking account had a beginning balance of $1,532.05 on November 21, 2019, and an ending balance of $4,265.74 on December 22, 2019.[37]

---

[32] Exhibit P 1,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000108.
[33] Exhibit P 1,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000117.
[34] Exhibit P 1,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000123.
[35] Exhibit P 1,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000130.
[36] Exhibit P 1,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000136.
[37] Exhibit P 1,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000143.

31. According to the "Statement Summary As Of 02/20/20," Fandal's Heritage Bank checking account had a beginning balance of $4,106.17 on January 21, 2020, and an ending balance of $10,199.57 on February 20, 2020.[38]   That ending balance included a deposit of $10,336.33 on January 21, 2020.[39]

32. Fandal did not have a zero or negative balance in her bank accounts at the time of the donation in October 2019.

33. Band testified at trial that her mother was unable to meet her monthly expenses without assistance.   The Court finds Band's testimony suspect at best.   Specifically, the Court does not believe that Band was being truthful when she testified regarding a Capital One check in the amount of $30,633.80 payable to Carol Fandal with a handwritten note "Given to Lisa Fandal Band to deposit in bank w/ Mr. Joe she is using $ until 2500 and will repay with $650 interest."[40]   Band denied that the check was given to her and, somewhat confusingly, testified that the money was deposited into her mother's account, though she also testified that she used some of it, less than $1,000, to make repairs on her house.

34. The Court further finds Band's testimony unbelievable that a handwritten note, which she verified as having been signed by her and dated April 30, 2019, stating, "I owe Carol Fandal $28,000. I will pay Carol Fandal $500/00 plus

---

[38] Exhibit D 3,  Heritage Bank of St. Tammany Checking Account ending in 2079, Bates 000198.
[39] *Id.*
[40] Exhibit D 6.

insurance when it arrives," was a joke between herself and her mother, Fandal.[41]

35. The Court further finds Band's testimony that she did not owe her mother any money unbelievable and not supported by the evidence.

36. Band also testified that she did not have any personal knowledge of her mother's finances during 2019 and parts of 2020.

37. The Court finds that Band was agitated, argumentative, and appeared evasive throughout her testimony.

38. The Court finds the more credible testimony, supported by the evidence in the record, came from Sherry Holden and Pamela Quinlan.

39. The Court has considered Sherry Holden's January 5, 2022 deposition testimony, which was introduced into evidence without objection.

40. Holden testified that she has known Fandal since 2005 and that she considered Fandal her best friend.

41. Holden testified that she spent almost every day with Fandal from 2005 to 2016.

42. Holden testified that Fandal owned certificates of deposit in the amounts of $5,000, $10,000, $35,000, and $40,000.

43. Holden testified that Fandal owned personal property, including jewelry, antique furniture, and an automobile.

---

[41] Exhibit D 7.

44. Holden testified that Fandal had enough money to take care of all of her bills and her health.

45. Holden testified that she had access to Fandal's bank accounts and reviewed the bank accounts with Fandal.

46. Holden testified that Band previously took money from Fandal's bank accounts in 2017 without Fandal's authorization.

47. Holden testified that Band owed money to her mother.

48. Holden assisted Fandal in making a report of elder abuse regarding Band to Tavia Elliott of the Louisiana Department of Health.

49. Holden further testified that Fandal had a will, dated April 10, 2013, which left all of her property to Sherry Holden and included a provision specifically disinheriting Band.

50. Holden testified that she moved to Arkansas in October 2016.

51. According to Holden, she and Fandal spoke on the phone almost daily following her move to Arkansas, sometimes for hours.

52. Holden testified that Fandal never asked to borrow money from Holden.

53. The Court finds Holden's testimony constitutes the sincere, credible testimony of a friend who cared deeply for Fandal, and further finds it supported by other evidence introduced at trial.

54. The Court also finds the testimony of Pamela Quinlan credible.

55. Quinlan's testimony corroborated the testimony of Sherry Holden in regard to Fandal's movable property owned at the time of the donation.

56. Quinlan testified that Fandal owned antique furniture, jewelry, art, and an automobile.

57. Quinlan provided photographs of Fandal's residence that showed Fandal's furniture and art, which Quinlan testified Fandal owned at the time of the donation.[42]

58. Quinlan further testified that Fandal had enough money to pay her bills.

59. Quinlan testified that Fandal never asked to borrow money from Quinlan.

60. The Court finds that the evidence presented at trial confirms that Fandal owned and possessed furniture, including antique furniture, signed art, silver utensils, a laptop, and gold jewelry, including a Cartier watch, at the time of the donation in October 2019.

61. The evidence also shows that Fandal owned a 2006 Nissan Murana car at the time of the donation in October 2019.

62. The Court finds that Fandal retained all of her personal property at the time of the donation.

63. The Court further finds, based upon the evidence submitted at trial, that there was no mortgage on the Property, Fandal had no liabilities at the time of her death, and Fandal paid the insurance and taxes on the Property, which averaged $500 per month.

64. No evidence was introduced of any outstanding bills owed by Fandal.

65. No evidence was introduced of an extravagant lifestyle by Fandal.

---

[42] Trial Exhibits D 12-17, D 19-21 D 23-24.

66. The parties have submitted an Article 1577 Notarial Testament of Carol Ann Fox Fandal, signed by Fandal on May 6, 2020, in which she bequeathed her entire estate to her daughter, Band.[43]   The May 6, 2020 testament does not specifically refer to the Property, located at 35327 Bayou Liberty Road in Slidell, Louisiana.

## III.   CONCLUSIONS OF LAW

### A. <u>The Donation.</u>

1. The Court has jurisdiction over the parties' claims under 28 U.S.C. § 1332, as complete diversity existed between the parties at the time of removal.[44] Additionally, the amount in controversy in this case at the time of removal was likely to exceed $75,000.

2. The Court further finds that, because Quinlan has invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332, this Court must apply the substantive law of the forum state, Louisiana.[45]

3. With respect to the donation at issue in this case, Louisiana Civil Code art. 1498 provides:

The donation *inter vivos* shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence.  If he does not do so, a donation of a movable is null for the whole, and a donation of an immovable is null for the whole unless the donee has alienated the immovable by onerous title, in which case the donation of such immovable shall not be declared null on the ground that the donor did not reserve to himself enough for his subsistence, but the

---

[43] Joint Exhibit 6, Bates 000010.
[44] It is uncontested that, at the time of removal, Fandal was a Louisiana domiciliary and Quinlan was a Mississippi domiciliary.
[45] *Wiley v. State Farm Fire & Cas. Co.* 585 F.3d 206, 210 (5th Cir. 2009) (citing *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999)).

donee is bound to return the value that the immovable had at the time that the donee received it. If the donee has created a real right by onerous title in the immovable given to him, or such right has been created by operation of law since the donee received the immovable, the donation is null for the whole and the donor may claim the immovable in the hands of the donee, but the property remains subject to the real right that has been created. In such a case, the donee and his successors by gratuitous title are accountable for the resulting diminution of the value of the property.

4. The determination of whether the donor reserved enough property for his subsistence must be made from the circumstances existing at the time the donation was made.[46]

5. The person seeking to nullify a donation pursuant to Article 1498 has the burden of proving by a preponderance of the evidence that the donation divested the donor of all of his property and that the donor did not reserve enough for his subsistence.[47]

6. In determining whether the donor reserved enough property for his substance, the question is not whether he divested himself of "all of his property." Instead, courts consider whether the donor's financial condition at the time of the donation in question was sufficient to support the donor's expenses and lifestyle.[48]

---

[46] *Madden v. Crawford,* 52,466 (La. App. 2 Cir. 2/27/19), 265 So.3d 1170, 1175.
[47] *Succession of Doll v. Doll*, 593 So.2d 1239 (La. 1992).
[48] *Tatum v. Riley*, 49,670 (La. App. 2 Cir. 5/6/15), 166 So.3d 380, 386.

7. In evaluating an individual's means of subsistence, courts are instructed to consider (but do not treat as dispositive) employment, public or private benefits, and possession of a usufruct in the property transferred.[49]

8. An *inter vivos* donation which divests the donor of all his immovable property should not necessarily be termed a donation *omnium bonorum* under Article 1498 if the donor is entitled to and is receiving a fixed, vested monthly income in the form of government and private benefits.[50]

9. The evidence before the Court, including a stipulation by the parties, shows that Fandal had a monthly income. Fandal received $999.00 a month in social security benefits and $849.80 a month from her husband's retirement benefits, for a total of $1,848.80 each month.

10. Based upon Louisiana jurisprudence, specifically *Tatum v. Riley*[51] and *Madden v. Crawford*,[52] the stipulation regarding Fandal's monthly income of $1,848.80, as well as her lifetime usufruct over the Property, the Court finds that Fandal reserved enough for her subsistence and that her *inter*

---

[49] *Ellis v. Benedict,* 408 So.2d 987 (La. App. 2 Cir. 1981), *overruled on other grounds by Succession of Doll*, 593 So.2d 1239; *Holcomb v. Baker,* 459 So.2d 158 (La. App. 2 Cir. 1984).

[50] *See, Ellis,* 408 So.2d at 990-91; *Tatum*, 49,670 at pp. 10-11, 166 So.3d at 386*; Madden,* 52,466 at pp. 8-10, 265 So.3d at 1175-77; *Holcomb,* 459 So.2d 158.

[51] 49,670 at pp. 9-11, 166 So.3d at 385-86 (affirming the trial court's determination that the plaintiffs failed to carry their burden of proving that the donation *inter vivos* divested the donor of all of her property without reserving enough for her subsistence under La. Civ. Code art. 1498, where the donor received monthly Social Security benefits in the amount of $1,037.00 and eight months of bank statements showed that the donor's checking account never had a negative ending balance).
per month 380.

[52] 52,466 at pp. 10-11, 265 So.3d at 1177 (finding no error in the trial court's ruling, rejecting plaintiff's claim of a donation *omnium bonorum*, where the donor retained a lifetime usufruct over the immovable property and had a monthly income of approximately $3,000).

*vivos* donation of the Property to Quinlan is not null and void as a donation *omnium bonorum* under La. Civ. Code art. 1498.

11. Burns failed to present any evidence showing that Fandal's monthly expenses exceeded her assets.

12. Accordingly, the Court finds that Burns failed to meet his burden of proving that the *inter vivos* donation of the Property divested Fandal of all her property without reserving enough for her subsistence.

**B. Defamation**

13. In her Answer to Third Amended Complaint Substituting Complainant, Counter Claim and Third Party Complaint, Quinlan asserts a third-party claim against Band for defamation, as well as a counterclaim against Burns, as the executor of Fandal's estate, for defamation.[53]

14. According to the Louisiana Supreme Court, "Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name."[54]

15. The following four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.[55]  Additionally, "The

---

[53] R. Doc. 65 at pp. 4-13.  The Court notes that while Quinlan asserts the same claims against Burns and Band in her Answer, the allegations in the Answer seem to assert claims for defamation and intentional infliction of emotional distress based upon actions taken by Band, not Burns.  Quinlan did not introduce any evidence in support of these claims against Burns.  *Id.*

[54] *Costello v. Hardy*, 2003-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139 (citations omitted).

[55] *Costello*, 2003-1146 at p.12, 864 So.2d at 139 (quoting *Trentecosta v. Beck,* 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559) (internal quotation marks omitted).

fault requirement is often set forth in the jurisprudence as malice, actual or implied."[56]  "Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages."[57]

16. The Court finds that Quinlan has failed to present evidence of a false or defamatory statement made by either Burns or Band concerning Quinlan, and failed to present evidence that Band or Burns acted with malice in making any such statement.  As such, Quinlan has failed to establish a third-party claim for defamation against Band and has failed to establish a counterclaim against Burns for defamation.

## C. <u>Intentional Infliction of Emotional Distress</u>

17. Quinlan has also asserted a third-party claim against Band for the intentional infliction of emotional distress, as well as an intentional infliction of emotional distress counterclaim against Burns, as the executor of Fandal's estate.[58]

18. A claim for intentional infliction of emotional distress under Louisiana law is actionable only if the plaintiff can show: (1) that the defendant's conduct was extreme and outrageous; (2) that the plaintiff's emotional distress was severe; and (3) that the defendant desired to inflict severe emotional

---

[56] *Costello,* 2003-1146 at p.12, 864 So.2d at 139 (citations omitted).
[57] *Id*. (quoting *Trentecosta*, 96-2388 at p.10, 703 So.2d at 559) (internal quotation marks omitted).
[58] R. Doc. 65 at pp. 4-13.

distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[59]

19. According to the Louisiana Supreme Court, "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[60]

20. The Louisiana Supreme Court has further explained that:

> Liability for a claim of intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."[61]

21. The Court finds that Quinlan has failed to prove that Band's conduct, in posting comments on social media platforms about her mother's relationship with Quinlan, was so outrageous or extreme as to go beyond all possible bounds of decency. As such, the Court finds that Quinlan has failed to establish a claim for intentional infliction of emotional distress against Band.

22. To the extent that Quinlan has also asserted a counterclaim for intentional infliction of emotional distress against Burns, as the executor of Fandal's

---

[59] *McCoy v. City of Shreveport,* 492 F.3d 551, 563 (5th Cir. 2007) (quoting *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).
[60] *White*, 585 So.2d at 1209.
[61] *Id.* (citations omitted).

estate, the Court specifically finds that Quinlan has failed to present any evidence whatsoever in support of that claim.

## IV.   CONCLUSION

The Court finds that plaintiff, Roy K. Burns, Jr., in his capacity as executor of the estate of Carol Ann Fox Fandal, has failed to carry his burden of proving that Fandal's donation *inter vivos* of immovable property to Pamela Quinlan violated La. Civ. Code article 1498, as the donation did not divest Fandal of all of her property at the time of donation and Fandal reserved enough for her subsistence.  Accordingly, the Court finds in favor of Pamela Quinlan and against Roy K. Burns, Jr. with respect to Burns' request for the Court to revoke the donation *inter vivos* of immovable property made by Fandal to Quinlan.

The Court, however, finds in favor of Franchesca Felicia Fandal Band and against Pamela Quinlan with respect to Quinlan's third-party claims for defamation and intentional infliction of emotional distress.

Additionally, the Court  finds in favor of Roy K. Burns, Jr., in his capacity as executor of the estate of Carol Ann Fox Fandal, and against Pamela Quinlan with respect to Quinlan's counterclaims for defamation and intentional infliction of emotional distress.

Additionally, Pamela Quinlan shall have **five (5) business days** from the date of this Order to   provide the Court with a proposed Final Judgment that is commensurate with the Court's Findings of Fact and Conclusions of Law.  Quinlan

shall send the proposed Final Judgment to the Court's email address, efile-Vitter@laed.uscourts.gov.

**IT IS SO ORDERED.**

New Orleans, Louisiana, April 29, 2022.

**WENDY B. VITTER**
**United States District Judge**